The opinion of the Court was delivered by
Withers, J.
Every phase of this case exhibited by the brief or presented by the argument, has received the examination of this Court, and its judgment and the grounds, upon which it rests, are now to be announced.
We advert first to the grounds that are taken in arrest of judgment; and they relate to the venire for the grand jury as well as that for the petit jury, and to the number, thirteen7, who were sworn of the grand jury that found the bill.
The objection to the venires is, that the sheriff has not endorsed upon them the fact of entry in his office, and it is insisted, that, therefore, they are not legal process and are void.
The sixth section of the sheriff’s Act directs the sheriff to keep a “ writ book,” into which he shall “make an entry,”— “ with the date, and endorse on the original the time of such entry in his office,” many kinds of process, mentioned in that section by name, among which a venire facias does not appear) and could be included under none that are specified unless under the word “ summons,” or the words “ any other mesne process whatever issuing from either of the Courts of Ordinary ^ Law, or Equity.”
*590 To regard tbe omission of tbe sheriff to comply with wbat is merely directory, in respect to such entry or endorsement, as rendering tbe process void, and thus upset all proceedings under it, would be to disregard a clear and well-recognized legal distinction, and work irreparable and wide-spread mischief to tbe public and to individuals. Though a venire is judicial process, and all such process is required to be authenticated by the seal of the Court, yet it is but a precept to the sheriff to summon into Court the jurors drawn; and having answered that purpose, it has effected its object, and cannot be assailed though not issued or returned within the time prescribed by the legislation of 1839, and though the device of the. seal be not legible upon its face — vide The State vs. McElmurray, 3 Strob. 33. Surely if this process or precept be beyond the reach of such objections, it may withstand those now urged against it. Even the omission to observe the requirement of the Act of 1799, directing new jury lists every three years, affords the prisoner no ground of objection to the array or of challenge to the polls — vide State vs. Baldwin & Massey, 2 Hill, 379. None can doubt that a general distinction between neglect by ministerial officers of statutory regulations that shall be put to the account of mere irregularity not affecting substantial justice, as also a distinction between objections available at the time of trial, sometimes curable then, and for that reason unavailing afterwards, are indispensable to the course of justice as administered by Courts, and to the stability and finality of their judgments.
It is objected, moreover, that the jury which found the bill was not a lawful grand jury because thirteen, of which number it consisted, were not enough. Our investigation of this point leads to the conclusion that twelve would be a sufficient number. Blackstone in 4 Com. 302, speaking of the panel of grand'jurors, says, “as many as appear on the panel are sworn upon the grand jury, to the amount of twelve at the *591 least, and not more than twenty-three, that twelve may be a majority, which number, as well as the constitution itself, we find exactly described so early as the laws of King Ethelred. Exeant séniores duodecim ihani,” &c. In 2 Hale, P. C. 151, is this language, “ In all criminal causes the most regular and safe way, and most consonant to Magna Charta, 5 Ed. 3, ch. 9, &c., is by presentment or indictment of twelve sworn men.” (That great judge was understood to have littlb favor for prosecutions by information, so often an engine of oppression in tyrannical reigns and our constitution has ratified his sentiments in that respect.) At page 161, he says, "if there be thirteen, or more, of the grand inquest, a presentment by less than twelve ought not to be, but if there be twelve assenting, though some of the rest of their number dissent, it is a good presentment, for if twelve agree it is not necessary for the rest to agree.” Says Mr. Chitty, 1 Crim. Law, 306, " the grand jury must consist of twelve at the least.” Hawkins concurs with the above authorities — vide Bk. 2 ch. 25, sec. 16. In Com. Dig. “ Indictment A.” it is said, an indictment is an accusation, “found by a proper jury of twelve men,” meaning by “proper,” no doubt, men of the proper qualifications, and resident in the county or other prescribed jurisdiction of the Court. But a jury of twelve men is recognised as a complete one. The reason of the rule, very ancient as we have found it to be, requiring twelve jurors, at the least, to concur in sending any man for trial before the petit jury of the sessions, is, by the concurrence of all writers upon the subject, that he shall not suffer in that jurisdiction without the assent of twenty-four jurors, affirming his guilt. Now, this object is secured as well by accepting a grand jury of twelve only, as of any greater number; and if there be no more than twelve, the more likely is the prisoner or'accused to escape trial altogether. The idea that more than twelve must be sworn may have been encouraged by the requisition that such number, “at the least,” must concur; by the circum *592 stance, that a greater number than twenty-four, has sometimes been required to be summoned, for with us thirty were at one time to be drawn and served ; by the observation of Mr. Cbitty, 1 Crim. Law, 312, that “it is not unusual, in practice, after fifteen or sixteen have been called, to consider the inquest as complete, and not to insist upon the service of the rest who may be in attendanceby the custom of the prosecution in desiring more than twelve to be impannelled to increase the probability.of securing an indictment; and lastly, by an inattentive reading of what Coke says at page 30, 3 Inst, as follows: “ No peer of the realm or any other subject, shall be convicted by verdict, but the said offences must be' found by above four-and-twenty, to wit, by twelve, or above, at his indictment, or by twelve peers, or above, if he be noble; and by twelve, and not above, if he^be under the degree of nobility.” Instead of “above four-and-twenty” the author manifestly meant, “ said offences must be found by four-and-twenty, or above,” that is at least four-and-twenty for a commoner, for his petit jury could comprise no more than twelve, but the peer might have a j ury for trial far above four-and-twenty, and the effort was to state the rule, in the same sentence, for both classes. Prom what source soever the conception arose that produced this ground of appeal, there seems to be no solid foundation for it in law, but very satisfactory reason and authority to hold a grand jury of thirteen members a lawful panel to indict. A remark may be here permitted, though not called for by this case,, touching the received opinion, that the maximum num-number is twenty-three grand jurymen. So late as 1837, it was affirmed by eminent English counsel, and it was not disproved on the occasion, that there was no judicial authority for this rule; that nothing could be cited for it but a dictum of Lord Mansfield, to be found in 2 Burr. 1088, which was styled, “rather an anecdote than a judicial decision.” But Lord Denman said, (Rex vs. Marsh, 6 Adol. & Ellis, 33; *593 Eng. Com. Law. 66,) “ tbe Court bas no doubt the limited number is twenty-three. It is a matter of practice proved by authorities in the only way in which proof can be given of a point of that kind which has been undisputed.”
To the objection founded upon the surmise, that the late rule of Court (the 97th,) is unconstitutional, because it prescribes a mode of organizing a petit jury when produced to a prisoner for challenge, different from that which had before prevailed, we need only say, we are satisfied with the cases of Cregier vs. Burton, 2 Strob. 487, and State vs. Boatwright, 10 Rich. 407, and deem it unnecessary to add any thing of argument to what may be found in them.
The first ground of appeal for a new trial alleges,' that inasmuch as the prisoners were jointly indicted, and were tried upon the count charging that they did inveigle, steal and carry away the negro, and the evidence showed that one of them only hired, aided, or counselled the other to do the thing charged, the jury should have been instructed to render a general verdict of acquittal, whereas the instruction was, that either of the two might be convicted and the other acquitted, according as the evidence might implicate the one and not the other in the specific charge laid.
.We cannot perceive any foundation in reason or authority, or any warrant in practice or principle, to maintain such position. This is not a case in which confederacy or combination is necessary to. constitute the crime. One or several may be guilty. So many as the proof may implicate in the offence charged are guilty, and if a dozen were charged .and .the evidence pointed to one only, why should he not be convicted and the others acquitted, as in assault and battery or murder, as to which last there never has been doubt? Eor robbery or burglary parties may be indicted jointly or separately, 2 Hale 173, and though they have acted separately, yet if the grievance is the result of the acts of all jointly, all may be indicted jointly for the offence, Arch. Or. PI. 59. The argu-. *594 ment is, that the statute ordains three distinct offences, to wit: 1. To inveigle, steal and carry away a slave: 2. To hire, aid or counsel another to do it: 8. To aid such slave in running away; that these prisoners were tried and convicted upon the first; that Clayton was shown to be guilty (if of any thing) only of the second offence ; and yet that conviction or acquittal upon this indictment could not be pleaded hereafter in bar of a prosecution for the offence of hiring, aiding and counselling. Let this be granted, and still it is obvious that such result does not follow from the fact that the parties are jointly indicted and the proof insufficient to convict both; but it would result from the fact, that the offence, supposed to be subsequently charged, was not that charged and tried upon this occasion; and the very same consequence would follow, whether the prisoners be indicted and tried separately or jointly. If there be validity in this objection, it would seem to go to the indictment itself, and contest the right to indict jointly, at all, under the statute.
It is deemed to be a suitable occasion to observe that since the case of State vs. McCoy, 2 Spear, 711, there seems no objection to an indictment under the Act of 1754 of one, as inveigling, stealing and carrying away a slave, and another, or others, as hiring, aiding or counselling that offence; just as in the case of principal and accessory in murder. The words of the Act make it manifest that two or more may bear the same relation to the crime, created by the Act, and to each other, that they may as to capital felonies at common law.
The second ground for a new trial complains that there was not proof sufficient to show Clayton guilty of inveigling, stealing and carrjdng away the slave; that the evidence as to him, indicated only aiding and abetting Carter, and was inconclusive upon even that form of guilt. This has led us to examine the facts reported, and we find evidence enough, if credible, (and it has been believed by the jury,) to show, that *595 tbe two prisionera were in concert on tbe same evening of tbe asportavit by Carter, in an enterprise pretended to be directed towards some inveterate runaway slave, yet ending in tbe possession and asportavit by Carter of Gilbert, tbe slave of Mrs. Hays, wbo was not runaway, wbo was in tbeir neighborhood, wbo must have been well known to them, according to all probability; that Carter’s guilt is proved beyond all reasonable question; that Clayton’s admissions (those not objected to) show a guilty participation with Carter; that when Carter entered tbe cars with Gilbert, Clayton was within four feet of them near a fire; that, as one witness believed, be soon after beard Clayton’s voice as be proceeded on horseback along tbe road from the railroad station; that Clayton admitted be rendered the service of carrying the horses back; all which combined does constitute evidence enough to justify the jury, in our deliberate opinion, in placing Carter and Clayton in tbe same category.
The question raised upon the admission of confessions cannot be better disposed of than by referring to our series of cases, Crank's, Kirby's, Vaigneur's and Gossett's which are too conclusive in favor of the ruling on circuit upon this point to warrant any additional observations.
Any answer that Calhoun could have made to the three' questions proposed for him and excluded would be liable to the double objection, that they would but disclose hearsay if of any avail at all, and otherwise would have been wholly immaterial. If every one of them had been answered as the counsel desired, in the affirmative, it is not perceived what influence they ought to have had upon the question before ■the jury.
The case of the State vs. Miles, 2 N. & McC. 1, is a full answer to the matter of the 6th ground taken for a new trial. The jury have found Carter guilty of stealing the .negro, and the case cited shows that it was quite immaterial whether he thought he was stealing a runaway or not. There does not *596 appear to us, however, any reason to suppose that Carter was in the least mistaken on the subject.
This Court is constrained to dismiss the motions in this case in behalf of the prisoners, and it is ordered accordingly.
O’Neall, Wardlaw, Whitner, Glover andMuNRo, JJ., concurred.

Motions dismissed.